IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SAAD LOHDI, | ( |
|     Plaintiff, | ( |
| | ( |
|     v. | (    1:12-cv-1108 (JCC/JFA) |
| | ( |
| FAIRFAX COUNTY/ BOARD OF SUPERVISORS, | ( |
| | ( |
|     Defendant. | ( |

# **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Fairfax County/Board of Supervisors' Motion to Dismiss [Dkt. 6] ("the Motion"). For the following reasons, the Court will grant Defendant's Motion to Dismiss.[1]

## **I. Background**

### **A. Factual Background**

Plaintiff's claims apparently arise from an involuntary commitment order issued by the Fairfax County General District Court on October 28, 2012. (Comp. 2.) As a consequence of this commitment order, Plaintiff was committed to the Northern Virginia Mental Health Institute ("NVMHI"). Plaintiff alleges that the commitment order named another

---

[1] The Court notes that Plaintiff did not appear in court for the scheduled hearing upon Defendant's Motion to Dismiss.

individual. (*Id.*) He states that when he made a Fairfax County law enforcement officer aware of the error on the face of the order, the law enforcement officer allegedly ignored him. (*Id.*) While committed at NVMHI, Plaintiff claims that he was the victim of medical malpractice and subjected to various other personal injuries. (*Id.*)

Within two days of his initial commitment to NVMHI, Plaintiff appeared before a special magistrate where, through his appointed counsel, he argued that he should be released from NVMHI because the involuntary commitment order contained the wrong name. The special magistrate heard his argument, as well as other evidence, but nevertheless continued Plaintiff's commitment. (*Id.*)

Plaintiff appealed his commitment to the Fairfax County Circuit Court and was released from NVMHI after a hearing on November 18, 2010. [Dkt. 1-1.] On the same day as his release, Plaintiff was once again detained again at NVMHI. (Comp. 2.) Defendant states that a second commitment order was issued, which Plaintiff did not contest. (Mem. Supp. Mot. 2.) Plaintiff then states that he voluntarily committed himself for five days. (Compl. 2.)

### B. Procedural Background

On October 2, 2012, Plaintiff Saad Lohdi filed the Complaint [Dkt. 1.] with the Court, alleging eleven separate

claims against the County: malicious prosecution, abuse of process, disability discrimination, defamation, false arrest, false imprisonment, medical malpractice, personal injury, personal injury - emotional, negligence, and racial profiling.[2] (Compl. at 1.)  He also filed a Motion for Leave to Proceed *in Forma Pauperis*.  [Dkt. 2.]  This Court granted the Motion for Leave on October 9, 2012. [Dkt. 3.]  On November 15, 2012, Defendant filed the present Motion to Dismiss.  They also filed a Memorandum in Support of their Motion to Dismiss.  [Dkt. 7.] Plaintiff filed an Opposition to Defendant's Motion to Dismiss on December 14, 2012. [Dkt. 12.]  He also filed a Memorandum of Points and Authorities in Support of his Opposition.  [Dkt. 13.]

Defendant's Motion is now before the Court.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

---

[2] As an initial matter, the Court notes that filings of a *pro se* party are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555. Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III. Analysis

Plaintiff's s Complaint alleges eleven separate claims against the County: malicious prosecution, abuse of process, disability discrimination, defamation, false arrest, false imprisonment, medical malpractice, personal injury, personal injury - emotional, negligence, and racial profiling. (Compl. at 1.)

#### A. "Racial Profiling" Claim

From the outset, the Court notes that there exists neither any federal nor state claim for "racial profiling." In adherence to the practice of construing the filing of a *pro se* party liberally, the Court has construed Plaintiff's claim as the equivalent of an equal protection claim under 42 U.S.C. § 1983 against Fairfax County.

#### B. Federal Law Claims

Pursuant to 42 U.S.C. § 1983, the federal civil rights statute:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983; *see generally Monroe v. Pape*, 365 U.S. 167 (1961). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Thus, no municipality can "be held liable under § 1983 on a *responde at superior* theory." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). However, § 1983 imposes "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 692; *Gordon v. Kidd*, 971 F.2d 1087, 1097 (4th Cir. 1992). Municipal policy may be found in written ordinances and regulations, *Monell*, 436 U.S. at 690, in certain affirmative decisions of individual policymaking officials, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986), or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens, *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Therefore, in order to establish the liability of a municipality for the actions of its employees, a plaintiff must plead and prove that: (1) the municipality had a policy or

custom of deliberate indifference to the deprivation of constitutional rights; and (2) this policy or custom caused the complained of injury. *Brown v. Mitchell*, 308 F.Supp.2d 682, 692 (E.D.Va. 2004).

Plaintiff has failed to articulate facts sufficient to support the notion that a policy or custom of deliberate indifference to the deprivation of constitutional rights caused the injuries of which he complains.  Indeed, neither Plaintiff's Complaint nor his Opposition to Defendant's Motion to Dismiss support the proposition that there is or formerly was a policy or custom of the sort needed to establish municipal liability under § 1983.  The mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).  Consequently, Plaintiff's claims under federal law must be dismissed.

### C. **State Law Claims**

In Virginia, territorially and politically, counties are integral parts of the State." *Mann v. County Bd. of Arlington County*, 199 Va. 169, 173 (1957).  Generally, a county cannot be held liable for not liable for tortious personal injuries resulting from negligence of its officers, servants and

employees. *Id.* at 169 (citing *Fry v. Albemarle County*, 86 Va. 195, 9 S.E. 1004 (1889)).

Indeed, "the doctrine of sovereign immunity is 'alive and well' in Virginia." *Messina v. Burden*, 228 Va. 301, 307 (1984). In Virginia, it is axiomatic that the doctrine of sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions. *Hoggard v. City of Richmond*, 172 Va. 145, 147-48 (1939). The Supreme Court of Virginia explained in *Hoggard*:

> [A] municipality is clothed with two-fold functions; one governmental, and the other private or proprietary. In the performance of a governmental function, the municipality acts as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits. To this end there is delegated to, or imposed upon, a municipality, by the charter of its creation, powers and duties to be performed exclusively for the public. In the exercise of these governmental powers a municipal corporation is held to be exempt from liability for its failure to exercise them, and for the exercise of them in a negligent or improper manner. This immunity is based on the theory that the sovereign can not (sic) be sued without its consent, and that a designated agency of the sovereign is likewise immune.
>
> There are granted to a municipal corporation, in its corporate and proprietary character, privileges and powers to be exercised for its private advantage.... For an injury resulting from negligence in their exercise or performance, the municipality is liable in a civil action

>    for damages in the same manner as an
>    individual or private corporation.

*Id.*

It is clear that the doctrine of sovereign immunity remains applicable. Thus, in Virginia, it is well established that "the sovereign is immune ... from actions at law for damages." *Gedrich v. Fairfax County Dept. of Family Services*, 282 F.Supp.2d 439, 473 (E.D.Va. 2003). This protection extends to liability for negligence associated with the performance of "governmental" functions, but can be held liable for negligence associated with the performance of "proprietary" functions. *Id.*; *see also Burson v. City of Bristol*, 176 Va. 53, 63 (1940). A function is governmental if it is "directly tied to the health, safety, and welfare of the citizens." *Edwards v. City of Portsmouth*, 237 Va. 167, 171, 375 S.E.2d 747, 750 (1989). Stated alternatively, a governmental function involves "the exercise of an entity's political, discretionary, or legislative authority." *Carter v. Chesterfield County Health Comm'n*, 259 Va. 588, 591 (2000) (citing *First Va. Bank-Colonial v. Baker*, 225 Va. 72 (1983)). This protection extends to actions undertaken by individuals at various levels in the municipal chain of command, as a municipality is immune from liability for intentional torts committed by an employee during the

performance of a governmental function. *Niese v. City of Alexandria*, 264 Va. 230, 239 (2002).

While the Commonwealth and its agencies are therefore generally immune from suits, the Commonwealth may waive its sovereign immunity. However, courts in Virginia "have consistently held that waiver of immunity cannot be implied from general statutory language or by implication. Statutory language granting consent to suit must be explicitly and expressly announced." *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 457, 117 S.E.2d 685, 689 (1961).  Furthermore, while the Virginia Tort Claims Act ("VTCA") waives the state's immunity for certain claims, it expressly disclaims any effort "to remove or in any way diminish the sovereign immunity of any county, city, or town in the Commonwealth." Va.Code Ann. § 8.01-195.3. The VTCA waives the sovereign immunity of the Commonwealth only. *The Rector and Visitors of the Univ. of Virginia v. Carter*, 267 Va. 242, 246, 591 S.E.2d 76, 78 (2004).

In this proceeding, the Commonwealth itself is not a defendant.  Fairfax County is entitled to sovereign immunity as a municipality, and to the extent the Board of Supervisors is considered a distinct defendant, it is a municipal instrumentality and is, therefore, entitled to sovereign immunity as well. *Mann ex rel. Walton v. Sentara Hospitals, Inc.*, 59 Va.Cir. 433 (2002).  To the extent that this action is

predicated upon the actions of the individual county employees or agents of the county, it is well established that the municipality is immune. *Niese*, 264 Va. at 239.  Furthermore, there is no question that, given the direct relation to mental health, the actions of which Plaintiff complains were associated with a governmental function "directly tied to the health, safety, and welfare of the citizens." *Edwards*, 237 Va. at 171.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted.

An appropriate Order will issue.

|  |  |
|---|---|
|  | /s/ |
| December 21, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |